UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-CV-62035-COHN/SELTZER

INTERCOASTAL REALTY, INC.,

    Plaintiff,

v.

PAUL TRACY,

    Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Paul Tracy's Motion to Dismiss Plaintiff's Complaint [DE 15] ("Motion to Dismiss"). The Court has carefully reviewed the Motion to Dismiss, Plaintiff's response [DE 18], Defendants' reply [DE 19], and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Intercoastal Realty, Inc. is a real estate company that specializes in the sale and marketing of luxury homes. Complaint ¶ 6. Plaintiff "utilizes the services of real estate agents who assist buyers and sellers of residential homes [to] conduct the purchase and sale of waterfront property in South Florida." Id. Joy Triglia ("Triglia") is a real estate agent who works for Plaintiff. Id.

Triglia worked at length on behalf of Defendant Paul Tracy ("Defendant" or "Lessor") to procure the sale of Defendant's multi-million dollar property located at 811 Poinciana Drive, Fort Lauderdale, FL 33301 ("the Property"). Id. ¶ 7. In early 2008, Defendant decided to lease the Property to Catherine DeFrancesco ("DeFrancesco" or "Lessee"). Id. ¶ 8. Accordingly, on January 11, 2008, Defendant and DeFranceso

executed a lease agreement ("the Agreement") for the Property.  Id.  The Agreement contained a purchase option.  The purchase option provided as follows:

> **PURCHASE OPTION**     Lessee shall have the option to purchase at a price to be determined by negotiation among the lessor and lessee, should they be able to agree on a purchase price.  In the event such a purchase option is exercised by lessee, they shall be entitled to apply 50% of the rental payments paid and received under this lease toward the purchase price.  Lessor and Lessee acknowledge that Joy Triglia, Broker Associate, Intercoastal Realty, Inc., is the only agent involved in this transaction and shall be paid six percent (6%) commission on the total purchase price should Lessee purchase said premises from Lessor at any time during or proceeding this lease term.

Id. ("Purchase Option").

Thereafter, Defendant "embarked on a course of conduct in an attempt to sell [the Property] without paying the six percent commission due under [the Agreement]." Id. ¶ 11.  Specifically, on June 29, 2009, Defendant created a Florida Limited Liability Company named "811 Poinciana Drive, LLC" ("the LLC").  Id.  Defendant was the initial member of the LLC.  Id.

The same day that Defendant created the LLC, Defendant executed a warranty deed for the Property in favor of the LLC.  Id. ¶ 12.  The LLC paid $10.00 and "other good and valuable considerations" for the Property.  Id.  Defendant then transferred management and control of the LLC to DeFrancesco.  Id. ¶ 13.  "DeFrancesco executed a mortgage and security agreement, borrowing $550,000 from Meyer Florence and using [the Property] as security for the loan." Id. ¶ 14.  DeFrancesco also executed a purchase money mortgage on behalf of the Property for the amount of $2,550,000.00.  Id.  The purchase money agreement reflected the LLC as the mortgagor and Defendant as the mortgagee.  Id.  The purchase money agreement lists

2

the Property as the security for the loan from Defendant to DeFrancesco.  Id.  Plaintiff therefore alleges that "rather than pay [Plaintiff] the commission it had earned when [Defendant] sold the multi-million dollar property to DeFrancesco, [Defendant] made the deliberate choice to engage in a course of conduct whereby [Plaintiff] would be wrongfully denied an approximately $240,000 commission due under the terms of the Lease Agreement."  Id. ¶ 15.

As a result, Plaintiff filed a complaint on December 28, 2009.  See DE 1 ("Complaint").  The Complaint alleges the following five counts: 1) Breach of Third Party Beneficiary Contract; 2) Breach of Quasi Contract and Unjust Enrichment; 3) Conspiracy to Deprive a Broker of a Commission; 4) Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); and 5) Breach of Duty of Good Faith and Fair Dealing.  Defendant has moved to dismiss all five counts.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged

therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Twombly, 550 U.S. at 555.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id.  Accordingly, a well pleaded complaint will survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### B. Breach of Third Party Beneficiary Contract

Under Florida law, "[a] person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract."  Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So. 2d 1028, 1030-31 (Fla. Dist. Ct. App. 1994).  However, if the third party to the contract is an intended third party beneficiary of the contract, the third party may maintain a breach of contract action against a party that breaches the contract.  Id. at 1031.  "A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong."  Id.

Thus, to plead a cause of action for breach of a third party beneficiary contract, a plaintiff must plead the following elements:

> (1) a contract between A and B;
> (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);
> (3) breach of that contract by either A or B (or both); and
> (4) damages to C resulting from the breach.

Id.  Additionally, to find the requisite intent, a plaintiff must show that both contracting

parties intended to benefit the third party.  Id.  "It is insufficient to show that only one party unilaterally intended to benefit the third party."  Id. (citing Clark and Co. v. Dep't of Ins., 436 So. 2d 1013, 1016 (Fla. Dist. Ct. App. 1983)).

      Here, the Agreement creates express rights for Plaintiff.  See Complaint ¶ 8 ("Lessor and Lessee acknowledge that [Plaintiff] is the only agent involved in this transaction and shall be paid six percent (6%) commission on the total purchase price should Lessee purchase said premises from Lessor at any time during or proceeding this lease term.").  Plaintiff, therefore, is a third party beneficiary of the Agreement.  See Greenacre Props., Inc. v. Rao, 933 So. 2d 19 (Fla. Dist. Ct. App. 2006) ("A third party must establish that the contract either expressly creates rights for them as a third party or that the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member.").

      Notwithstanding, Defendant argues that Plaintiff has failed to allege a breach of the Purchase Option in the Agreement and thus cannot state a claim for breach of third party beneficiary contract.  Specifically, Defendant seizes on the language in the Purchase Option that "provides that Intercoastal would receive a commission if Lessee purchased the property from Lessor at any time during or proceeding this lease term."  Motion to Dismiss at 5 (emphasis in original).  Defendant contends that this language does not entitle Plaintiff to a commission for any transfer of the Property that occurred *after* the expiration of the Agreement.  See id.

      Defendant appears to confuse the word "preceding" with the word "proceeding."  See Reply at 3 ("[T]he plain meaning of 'during or proceeding this lease term' equates to the time period during or *prior* to the lease term . . . ." (emphasis added)).  The word

"preceding" is not used in the Purchase Option. The word "proceeding," on the other hand, is a noun meaning "a course of action; procedure" or "a continuing of an action," or a verb meaning, among other things, "to go forward or onward, esp. after an interruption; continue," "to undertake and carry on some action or process," and "to issue forth; originate." The American Heritage Dictionary 987 (2d college ed. 1985). Furthermore, in the Purchase Option, the word "proceeding" follows the preposition "during." Thus, the Court finds it unlikely that the parties intended to use the word "proceeding" as a noun. To the contrary, the Court finds that a reasonable party could interpret the phrase "proceeding this lease term" to mean "following this lease term" or "arising from this lease term." Cf. Vinneau v. Met. Life Ins. Co., 548 So. 2d 856, 860 (Fla. Dist. Ct. App. 1989) (citing Helms v. Gen. Film Dev. Corp., 346 So. 2d 1064 (Fla. Dist. Ct. App. 1977) ("Generally speaking, unless it appears as a matter of law that a contract cannot support the action alleged, a complaint should not be dismissed on motion to dismiss for failure to state a cause of action.")).

To accept Defendant's contention that the purchase option does not entitle Plaintiff to a commission for any transfer of the Property that occurred *after* the expiration of the Agreement, the Court must disregard the word "proceeding." The Court, however, will not disregard contract terms, for "[a]n interpretation of a contract which gives a reasonable, lawful and effective meaning to all of [a contract's] terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect." Seabreeze Rest., Inc. v. Paumgardhen, 639 So. 2d 69, 71 (Fla. Dist. Ct. App. 1994); see also Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938, 941 (Fla. 1979) ("In construing a written contract, every provision should be given

meaning and effect."). The Court therefore declines to adopt Defendant's interpretation of the Agreement.

Alternatively, Defendant argues that Plaintiff has failed to allege a breach of the Agreement. Specifically, Defendant points out that the Purchase Option requires Defendant to pay a commission to Plaintiff only if Defendant sells the Property to DeFrancesco. Here, the Complaint alleges that Defendant transferred the Property to the LLC. Thus, the event contemplated in the Purchase Option that would require Defendant to pay Plaintiff a commission (i.e., a sale from Defendant to DeFrancesco) never transpired. Because the event contemplated in the Purchase Option never transpired, Defendant's failure to pay Plaintiff a commission was not a breach of the Agreement. See Motion to Dismiss at 6. Because the Complaint fails to allege a breach of the Agreement, the Court will dismiss Count I.

### C. Breach of Quasi Contract and Unjust Enrichment

Count II asserts a claim for breach of quasi contract and unjust enrichment. Unjust enrichment is an equitable doctrine. "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd., 329 F.3d 1241, 1245 n.3 (11th Cir. 2003). The doctrine applies only where (1) the plaintiff conferred a benefit on the defendant, who had knowledge of the benefit; (2) the defendant voluntarily accepted and retained the benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. See Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp., 899

So. 2d 1222, 1227 (Fla. 1st DCA 2005).  Here, the Court finds that Plaintiff adequately alleges the necessary elements of an unjust enrichment claim.  See Complaint ¶¶ 23-27.

Nonetheless, Defendant contends that "Count II should be dismissed because the factual allegations utilized by Intercoastal to support Count I for breach of third party beneficiary contract are identical to the factual allegations used to support Count II for breach of a quasi-contract and unjust enrichment."  Motion to Dismiss at 6-7; see also Reply at 5 ("Count II must be dismissed because the factual allegations asserted by Intercoastal to support Count I . . . are identical to the factual allegations used to support Count II." (emphasis in original)).[1]  Defendant supports its contention by arguing that Plaintiff's "allegation of an actual contract defeats any potential for a claim for quasi-contract and/or unjust enrichment and Count II must be dismissed because Intercoastal has alleged an adequate remedy; albeit one that does not provide relief to Intercoastal."  Id. at 7.  Defendant misstates the law.

A plaintiff is not prevented from asserting an equitable cause of action merely because the plaintiff also *alleged* an adequate legal remedy.  Rather, it is the existence of a legal remedy that bars an equitable cause of action.  Cf. Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("It is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there *is* an adequate legal remedy." (emphasis added)).  A mere

---

[1] A review of the Complaint, however, quickly reveals that Defendant's contention is demonstrably false.  The factual allegations asserted in Count II are not identical to the factual allegations in Count I.  Compare Complaint ¶¶ 16-22 with id. ¶¶ 23-27.

8

allegation cannot bar Plaintiff's claim.

Indeed, nothing prevents Plaintiff from pursuing alternative claims of breach of contract and unjust enrichment in separate counts.  See JI-EE Industry Co., Ltd. v. Paragon Metals, Inc., No. 09-81590-CIV, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) (citing Williams v. Bear Stearns & Co., 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998) ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature.")); see also Rule 8(d)(2) of the Federal Rules of Civil Procedure ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); Manicini Enters., Inc. v. Am. Exp. Co., 236 F.R.D. 695, 698-99 (S.D. Fla. 2006) ("[A] plaintiff may plead inconsistent or alternative theories of relief.").

Defendant's position is further undermined by his own argument that no contract exists between the parties.  Motion to Dismiss at 6 ("Intercoastal should not be permitted to rewrite the terms of the [Agreement] . . . as it is not even a party to that [Agreement].").  Moreover, as set forth above, the Court accepted Defendant's argument that Plaintiff failed to state a claim for breach of contract.  The Court, therefore, will not dismiss Count II.

### D. Conspiracy Claim

Count III of Plaintiff's Complaint seeks damages based on an alleged conspiracy to deprive Plaintiff of a commission.  Defendant asserts that Plaintiff "incorporates each of the factual allegations that it utilizes to support Count I for alleged breach of a third party beneficiary contract to also support Count III for conspiracy."  Motion to Dismiss at 7.  Specifically, Defendant maintains, "dismissal of Count III is appropriate because the

conspiracy claim is based on the exact same alleged conduct that forms the basis of Intercoastal's breach of third party beneficiary contract claim." Reply at 5-6 (emphasis in original).

A review of the Complaint, however, reveals that Defendant's contention is again demonstrably false. Count III does not incorporate each of the factual allegations that Plaintiff utilized to support Count I. Compare Complaint ¶¶ 16-22 with id. ¶¶ 28-33. The Court summarily rejects this argument.

Alternatively, Defendant argues that "Count III must be dismissed because the Economic Loss Rule bars this claim." Id. at 8. The economic loss rule provides that unless a party suffers a personal injury or property damage, that party is "generally not entitled to initiate an action in tort to recover an economic loss." Sarkis v. Pafford Oil Co., Inc., 697 So. 2d 524, 527 (Fla. Dist. Ct. App. 1997) (citing Casa Clara Condo. Assoc., Inc. v. Charley Toppino & Sons, Inc., 620 So. 2d 1244 (Fla. 1993)). "This rule is based on the premise that parties to a contractual relationship have allocated their respective rights and remedies and consequently it is inappropriate to introduce tort remedies." Id.

Here, Plaintiff's claim for conspiracy to deprive a broker of a commission is predicated upon the Defendant's alleged efforts to circumnavigate the third-party beneficiary contract. As explained above, Plaintiff is indeed a third-party beneficiary of the Agreement. Thus, even though Plaintiff is not a party to the Agreement, the economic loss rule bars a third party beneficiary's tort claims if the tort claims are based on the same allegations as the alleged breach of contract. See Ocean Ritz of Daytona Condo. v. GGV Assocs., Ltd., 710 So. 2d 702, 704-05 (Fla. Dist. Ct. App. 1998).

Notwithstanding, certain tort claims can succeed even where the parties have a contractual relationship. "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996). Fraudulent inducement is such an example because it is a tort independent of a breach of contract claim in that it "'requires proof of facts separate and distinct from the breach of contract.'" Indemnity Ins. Co. v. Am. Aviation, Inc., 891 So. 2d 532, 537 (Fla. 2004) (quoting HTP, 685 So. 2d at 1239).

Plaintiff's conspiracy claim incorporates alleged acts that are independent of the acts that allegedly breached the contract. Specifically, Count III asserts as follows:

> Tracy and DeFrancesco made concerted efforts to improperly avoid paying Intercoastal its rightfully earned commission. Tracy and DeFrancesco did so by dealing with each other directly, in secret, and to the exclusion of Triglia and Intercoastal. In doing so, the parties intentionally excluded Triglia and Intercoastal from the final negotiations to avoid the payment of commission.

Complaint ¶ 32. These allegations are separate and distinct from the allegations in Plaintiff's claim for breach of third party beneficiary contract. Cf. Osheroff v. Rauch Weaver Millsaps & Co., 882 So. 2d 503 (Fla. Dist. Ct. App. 2004) (affirming jury verdict finding seller of property breached contract with real estate broker and committed civil conspiracy to deprive broker of commission); id. at 505 ("[I]f the seller and buyer intentionally exclude the broker from the negotiations and then strike a deal, the broker is still entitled to a commission."). The economic loss rule, therefore, does not bar Plaintiff's conspiracy to deprive a broker of a commission. Consequently, the Court will not dismiss Count III.

## **E. FDUTPA**

Plaintiff alleges that Defendant has engaged in unfair acts and deceptive practices in violation of section 501.204(1), Florida Statutes (i.e, FDUTPA).  FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).  To state a claim under FDUTPA, a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  Galstaldi v. Sunvest Comms. USA, LLC, 637 F. Supp. 2d 1045, 1056 (S.D. Fla. 2009).  FDUTPA's stated purpose is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).  Although the statute does not define "unfair and deceptive act or practice," the provisions of the act are to be "construed liberally."  Id. § 501.202.  A practice is unfair under the FDUTPA if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003).

Defendant argues that Plaintiff does not have standing to maintain a FDUTPA action because Plaintiff is not a "consumer."  Many cases, however, hold that non-consumers may sue under FDUTPA.  See Kelly v. Palmer, Refiler & Assocs., P.A., No. 08-21843-CIV, 2010 WL 111492, at *13 (S.D. Fla. Jan. 11, 2010) (citing cases).  These cases determined that non-consumers may sue under FDUTPA because of a 2001 amendment to the statute.  See id.

In 2001, the Florida Legislature replaced the word "consumer" with the word

"person."  See 2001 Laws of Fla. ch. 2001-39 § 6 (amending § 501.211(2) as described).  Thereafter, several courts reasoned that the amendment "demonstrates an intent to allow a broader base of complainants . . . to seek damages" under FDUTPA.  For example, see Chief Judge Moreno's opinion in Kelly, 2010 WL 111492, at *13 (affirming and adopting report of United States Magistrate Judge Edwin G. Torres); see also Niles Audio Corp. v. OEM Sys. Co., Inc., 174 F. Supp. 2d 1315, 1320 (S.D. Fla. 2001) (holding competitor could seek damages under newly amended § 501.211(2)); N. Am. Clearing, Inc. v. Brokerage Computer Sys., No. 6:07-cv-1503-Orl19KRS, 2009 WL 3241983, at *9 (M.D. Fla. Oct. 5, 2009)  (declining to grant summary judgment merely because the plaintiff was not a consumer); James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecomms., Inc., No. 3:07-cv-598-J-32MCR, 2008 WL 360803, at *2-*3 (M.D. Fla. Feb. 8, 2008) ("Courts in this district have held that [the 2001 amendment replacing "consumer" with "person"] demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages, not just injunctive relief."); True Title, Inc. v. Blanchard, No. 6:06-cv-1871-Orl-19DAB, 2007 WL 430659, at *3-*4 (M.D. Fla. Feb. 5, 2007); Advanced Prot. Techs., Inc. v. Square D. Co., 390 F. Supp. 2d 1155, 1164 (M.D. Fla. 2005); Gritzke v. M.R.A. Holding, LLC, No. 4:01CV495-RH, 2002 WL 32107540, at *4 (N.D. Fla. March 15, 2002).

Notwithstanding, several cases have reached the opposite result (i.e., only consumers may sue for damages under FDUTPA).  See, e.g., Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1349-50 (S.D. Fla. 2009) (holding that plaintiff, as a non-consumer, was not entitled to bring a claim for monetary damages

under FDUTPA); Cannova v. Breckenridge Pharm., Inc., No. 08-81145-CIV, 2009 WL 64337, at *3 (S.D. Fla. Jan. 9, 2009) (dismissing FDUTPA claim because plaintiff failed to allege he acted as a consumer in the conduct of trade or commerce); Goodbys Creek, LLC v. Arch Ins. Co., No. 3:07-cv947-J-33HTS, 2008 WL 2950112, at *8-*9 (M.D. Fla. July 31, 2008) ("Only consumers may bring private suit under FDUTPA.").

Judge Marra, for example, after examining the legislative history surrounding the enactment of the 2001 amendments, has concluded that only consumers may sue for damages under FDUTPA.  See Kertesz, 635 F. Supp. 2d at 1349.  The Kertesz opinion sets forth the following:

> With respect to the definition of "consumer" in FDUTPA, the legislative history states:
>
> The reason for enacting the FDUTPA was to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.
>
> ....
>
> Since 1979, the FDUTPA has contained a definition of "consumer" which includes corporations and other businesses. [ ] Because the remedies under the FDUTPA were intended by the Legislature to be available to all persons, including businesses, the Legislature has several times amended the definition of "consumer" in the FDUTPA to clarify the intent to include businesses. Notwithstanding these amendments, courts have been inconsistent in their interpretations of the statute and its protections of businesses.  Senate Staff Analysis, CS/SB 208, Mar. 22, 2001, at p. 3.

Id.  "The Committee also stated that the word 'consumer' should be stricken and replaced by the word 'person' in the text of the statute and noted that [section 1.01(3), Florida Statutes,] understands 'person' to include a business."  Id.

According to Judge Marra, "this change clarifies that 'remedies available to

14

individuals are also available to businesses.'" Id. (citing Senate Staff Analysis, CS/SB 208, Mar. 22, 2001, at 7; Senate Staff Analysis, SB 208, Jan. 16, 2001, at p. 3 ("[T]he task force believed that the legislature intended to afford the remedies and protections under the FDUTPA to businesses")). Furthermore, the "legislative history suggests to the Court that the change in the word 'consumer' to 'person' served to clarify that businesses, just like individuals, could obtain monetary damages in FDUTPA cases." Id. This interpretation is consistent with the overall purpose of FDUTPA (i.e., to "protect the consuming public *and legitimate business enterprises* from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."). Fla. Stat. § 501.202(2) (emphasis added).

In Kertesz, however, the Court did not address whether "a legitimate business enterprise" that is not a consumer, rather than an individual non-consumer, would have standing to seek monetary damages under FDUTPA. The Court therefore focused its attention on the first part of the statute's stated purpose (i.e., to protect the *consuming public*). See Kertesz, 635 F. Supp. 2d at 1349. Consequently, Judge Marra held that "Plaintiff, as a non-consumer, is not entitled to monetary damages under FDUTPA." Id. at 1350.

Here, the Complaint effectively alleges that Plaintiff is a legitimate business enterprise. See Complaint ¶ 6 ("Intercoastal is a highly respected real estate company located in Fort Lauderdale, Florida which has, for nearly thirty years, specialized in the sale and marketing of high end, luxury homes."). Thus, this Court need not resolve the split in authority concerning whether individual, non-consumer plaintiffs have standing to seek monetary damages under FDUTPA. Because Plaintiff is a legitimate business

enterprise, the Court finds Plaintiff has standing to seek monetary damages under FDUTPA.[2]

Alternatively, Defendant argues that Plaintiff has "failed to adequately allege a cause of action for relief under the statute" because Plaintiff's allegations are merely conclusory. The Court disagrees. The Complaint is replete with detailed factual allegations setting forth the allegedly deceptive act and unfair practice that Defendant employed to deprive Plaintiff of a commission for the sale of the Property. The Court will not dismiss Count IV.

### F. Good Faith and Fair Dealing

"Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005). A breach of the implied covenant of good faith and fair dealing is not, however, an independent cause of action. Id. Rather, the implied covenant of good faith and fair dealing attaches to the performance of a specific contractual obligation. Id.

The Eleventh Circuit has held that "a claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." Id. (citing Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414 (11th Cir. 1990); Barnes v. Burger King Corp., 932 F. Supp. 1420, 1438-40 (S.D. Fla. 1996)). Thus, Defendant asserts that "because Count I (for breach

---

[2]  This result is particularly appropriate in light of FDUTPA's instruction that courts should liberally construe the statute. Fla. Stat. § 501.202.

of third party beneficiary contract) fails and should be dismissed, Florida law precludes a finding of breach of the covenant of good faith and fair dealing." Id. at 11.

As explained above, Plaintiff has failed to adequately allege a breach of the Agreement. Plaintiff, therefore, has also failed to adequately allege a breach of the implied covenant of good faith and fair dealing. Accordingly, the Court will dismiss Count V.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Paul Tracy's Motion to Dismiss Plaintiff's Complaint [DE 15] is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiff's claims for breach of third party beneficiary contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count V) are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

3. Plaintiff, no later than May 6, 2010, shall file either an amended complaint or a notice that it elects to proceed on the remaining counts as alleged.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 16th day of April, 2010.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record.